FILED

2012 AUG 16  PM 4: 12

CLERK US DIST... ......
SOUTHERN DIST... ... ....

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. **12CR3429WWQH** |
| Plaintiff, ) | I N D I C T M E N T |
| v. ) | Title 18, U.S.C., Sec. 1349 - Conspiracy to Commit Wire Fraud; |
| TERENCE J. BONNER, ) | Title 18, U.S.C., Sec. 1343 - Wire Fraud; Title 18, U.S.C., Sec. 2 - |
| Defendant. ) | Aiding and Abetting; Title 18, U.S.C., Sec. 981(a)(1)(C), and Title 28, U.S.C., Sec. 2461(c) - Criminal Forfeiture |

The grand jury charges:

### INTRODUCTORY ALLEGATIONS

1.   The National Border Patrol Union (the "Union") is the labor union that represents over 14,000 agents and other personnel employed by the United States Border Patrol ("Border Patrol"). The members of the Union pay monthly membership dues of approximately $56 to fund the Union's activities.

2.   Defendant TERENCE J. BONNER (hereinafter "BONNER") was a member of the Border Patrol from May 1978 until his retirement on May 31, 2010. During this period, he was paid by the Border Patrol for his service as one of its agents.

//

//

WMC:RSH:nlv(2):San Diego
8/15/12

3.    During 22 of the years (February 1989 to March 8, 2011) he was employed by the Border Patrol, BONNER served as President of the Union.   When serving in this capacity, BONNER worked exclusively on Union business and was not assigned to work with other Border Patrol agents in the field.   During the time he was President of the Union, BONNER worked largely from his home in Campo, California, and traveled extensively throughout the country.

3.    As President of the Union, BONNER was the Chief Executive Officer and served as Chair and Presiding Officer of the Union's Executive Committee - a committee made up of the Union's other officers.   This organization is known as the National Border Patrol Council and is affiliated with the American Federation of Government Employees or the AFGE.   All of the Union's officers were active duty Border Patrol agents or retired agents.

4.    The position of Secretary-Treasurer was filled by one of the other Union officers. For over thirty-two years - from 1978 to July 2011 - this position was occupied by co-conspirator one.

5.    As President of the Union, BONNER promulgated and signed various Union policies that resulted in additional benefits being provided to the Union officers, including himself. These additional benefits were over and above the standard compensation that the officers would have ordinarily received from the Union.

6.    In 1994 and 2009, BONNER signed and promulgated "clothing allowance" policies, which obligated the Union (in certain circumstances) to pay or reimburse its officers for clothing purchased in the performance of Union duties.

7.    In 1995, 2001, and 2009, BONNER signed, promulgated and/or revised "reward" policies that, in part, provided that each elected

officer "shall be entitled to spend up to $800.00 annually to purchase one or more gifts and/or meals for their spouse or 'significant other' and/or children at any time of their choosing."

8.    In 1993 and 2010, BONNER signed and promulgated "lost wages" policies calling for the Union to reimburse its officers for various components of Border Patrol pay (e.g., additional pay for Sundays, holidays, nights, and other specified overtime).  By the specific terms of these policies, these lost wages were only available to the extent that the officer's Union activities caused them to lose  pay that they otherwise would have received if not for their Union duties.

9.    The lost wage policies further provided that in order for an officer to become entitled to lost wages payments, the officer needed to provide proof to the Secretary-Treasurer that they had, in fact, been engaging in Union activities during the claimed hours. Both the 1993 and 2010 versions of this policy specifically provided that the Union would pay its officers for these lost wages, only "upon provision of proof to the Secretary/Treasurer that the officer was engaged in activities on behalf of the Council for all hours claimed."

10.    As a result of the scheme described herein, BONNER illegally obtained hundreds of thousands of dollars in Union funds to which he was not entitled.

### Count 1 - Conspiracy to Commit Wire Fraud

### [18 U.S.C. § 1349]

11.    The introductory allegations contained in Paragraphs 1 through 10 are realleged and incorporated by reference herein.

12.    Beginning on a date unknown to the grand jury and continuing through at least March 24, 2011, within the Southern District of California and elsewhere, defendant TERENCE J. BONNER did knowingly

3

and wilfully conspire and agree with co-conspirator one to commit the offense of wire fraud – that is: to knowingly devise, with the intent to defraud, a material scheme and to obtain money and property from the Union by means of materially false and fraudulent pretenses, representations and promises, and by concealment and omission of material facts, and to transmit and cause to be transmitted by means of wire communication in interstate commerce any writings, signs, and signals for the purpose of executing such scheme; all in violation of Title 18, United States Code, Section 1343.

## METHODS AND MEANS OF THE CONSPIRACY

13.  It was part of the conspiracy that BONNER would submit claims seeking "lost wages" to co-conspirator one that falsely claimed that BONNER had worked periods of time for the Union that he had not, in fact, worked.  The false claims included time frames in the future that, of necessity, BONNER could not have worked at the time he submitted his claims.

14.  It was a further part of the conspiracy that BONNER would submit false claims seeking "lost wages" for time frames during which he was not, in fact, engaged in activities on behalf of the Union. These false claims included periods of time when BONNER was actually visiting his mistress in Chicago or family members, as well as trips to attend non-Union activities, such as hockey games and other sporting events.

15.  It was a further part of the conspiracy, that BONNER would submit false claims seeking "lost wages" for time frames when he was not working on Union activities, but at home, downloading, viewing, and archiving pornography on hard drives purchased by BONNER at Union expense.

16.   It was a further part of the conspiracy, that BONNER – contrary to the very policy he established – would fail to provide proof in connection with his false claims that he "was engaged in activities on behalf of the Council for all hours claimed."

17.   It was a further part of the conspiracy, that co-conspirator one would cause the Union to pay BONNER's false claims seeking "lost wages" without requesting or requiring proof that BONNER was engaged in activities on behalf of the Council for all hours claimed.

18.   It was a further part of the conspiracy, that co-conspirator one would occasionally facilitate, conceal and disguise BONNER's improper receipt of Union funds by issuing BONNER a check drawn on the Union's bank account bearing both his and BONNER's signature.

19.   It was a further part of the conspiracy, that co-conspirator one would occasionally facilitate, conceal and disguise BONNER's improper receipt of Union funds by obtaining bank checks for BONNER.

20.   It was a further part of the conspiracy, that BONNER would submit travel vouchers to co-conspirator one falsely certifying that he was seeking reimbursement for expenses incurred in furtherance of Union activity.   Rather than appropriate Union activity, these fraudulent travel vouchers sought reimbursement for, among other things, personal travel expenses, including trips when BONNER was actually visiting his mistress in Chicago or family members, as well as trips to attend hockey games and other sporting events.

21.   It was a further part of the conspiracy, that BONNER would cause the Union to pay BONNER's false travel vouchers, either by Union check or bank check.

//

//

5

22.   It was a further part of the conspiracy, that BONNER would submit false credit card claims to co-conspirator one seeking reimbursement for personal expenses not in furtherance of Union activity, including travel, meals, car rentals, tips, books (e.g., "You Staying Young" by Dr. Oz), magazines and/or subscriptions (e.g., subscriptions to Zagat's restaurant ratings, and luggage.

23.   It was a further part of the conspiracy, that BONNER would submit false credit card claims to co-conspirator one seeking reimbursement for dozens of hard drives used to store his pornography collection that were not maintained in furtherance of Union activity and whose presence on Border Patrol computers would have been specifically prohibited by Government policy.

24.   It was a further part of the conspiracy, that BONNER would direct co-conspirator one to pay these credit card bills in full, and that co-conspirator one would, in fact, do so.

25.   It was a further part of the conspiracy, that BONNER and co-conspirator one would conceal and omit to disclose to the Union's membership the manner in which BONNER was being personally enriched at Union expense.

26.   It was a further part of the conspiracy, that BONNER would submit false claims for lost wages, travel reimbursement, payment of credit cards, or payment of other expenses to co-conspirator one by interstate email or by interstate fax.

All in violation of Title 18, United States Code, Section 1349.

## Counts 2 to 5 - Wire Fraud

### [18 U.S.C. § 1343]

27.   The introductory allegations set forth in paragraphs 1 through 10 are hereby realleged and incorporated by reference herein.

28. Beginning on a date unknown to the grand jury, and continuing through at least March 24, 2011, defendant TERENCE J. BONNER knowingly devised and intended to devise, with the intent to defraud, a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by intentional concealment and omission of material facts.

29. The Grand Jury realleges and incorporates by reference paragraphs 13 through 26 of Count 1 of this Indictment as more fully describing the scheme and artifice to defraud.

30. On or about the dates listed below in Column "A," within the Southern District of California, and elsewhere, defendant TERENCE J. BONNER, for the purpose of executing the scheme and artifice to defraud and attempting to do so, caused to be transmitted by means of wire and radio communications in interstate commerce certain writings, signs, and signals – that is, false claims by BONNER seeking reimbursement from the Union of purported "lost wages," pertaining to the period described in Column "B," such claims being made in the amounts listed in Column "C":

| Count | Date of Claim – Column "A" | Period Covered by Claim – Column "B" | Amount of Claim – Column "C" |
|-------|---------------------------|--------------------------------------|------------------------------|
| 2 | June 5, 2007 | Calendar Year 2007 | $24,558.60 |
| 3 | March 24, 2008 | Calendar Year 2008 | $25,811.76 |
| 4 | March 20, 2009 | Calendar Year 2009 | $26,871.77 |
| 5 | April 7, 2010 | January 1, 2010 to May 31, 2010 | $10,620.05 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

//

//

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Counts 6 to 12 - Wire Fraud

### [18 U.S.C. § 1343]

31.   The introductory allegations set forth in paragraphs 1 through 10 are hereby realleged and incorporated by reference herein.

32.   Beginning on a date unknown to the grand jury, and continuing through at least March 24, 2011, defendant TERENCE J. BONNER knowingly devised and intended to devise, with the intent to defraud, a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by intentional concealment and omission of material facts.

33.   The Grand Jury realleges and incorporates by reference paragraphs 13 through 26 of Count 1 of this Indictment as more fully describing the scheme and artifice to defraud.

34.   On or about the dates listed below in Column "A," within the Southern District of California, and elsewhere, defendant TERENCE J. BONNER, for the purpose of executing the scheme and artifice to defraud and attempting to do so, caused to be transmitted by means of wire and radio communications in interstate commerce certain writings, signs, and signals - that is, false claims by BONNER seeking payment from the Union of expenses purportedly incurred in furtherance of Union activity, such claims being made in the amounts listed in Column "B":

//

//

//

//

//

8

| Count | Date of Claim - Column "A" | Amount of Claim - Column "B" |
|---|---|---|
| 6 | July 1, 2007 | $10,234.67 |
| 7 | September 29, 2008 | $9,602.91 |
| 8 | October 27, 2008 | $3,954.19 |
| 9 | December 1, 2008 | $9,279.88 |
| 10 | July 8, 2009 | $3,940.08 |
| 11 | November 8, 2009 | $5,536.40 |
| 12 | March 4, 2010 | $5,518.69 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

**FORFEITURE ALLEGATIONS**

35. The allegations contained in this Indictment are realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

36. As a result of the commission of the felony offenses alleged in Counts 1 through 12, said violations being punishable by imprisonment for more than one year, and pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code Section 2461(c), defendant BONNER shall, upon conviction, forfeit to the United States all rights, title and interest in any and all property real and personal, which constitutes or is derived from proceeds traceable to the offense, and any property traceable to such property; all in violation of Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

//

//

37.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants -

      (1)  cannot be located upon the exercise of due diligence;

      (2)  has been transferred or sold to, or deposited with, a third person;

      (3)  has been placed beyond the jurisdiction of the Court;

      (4)  has been substantially diminished in value; or

      (5)  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b) and pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the said property listed above as being subject to forfeiture.

DATED: August 16, 2012.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
W. MARK CONOVER
Assistant U.S. Attorney

By: _____
ROBERT S. HUIE
Assistant U.S. Attorney