1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10
11
12
13
14

| UNITED STATES OF AMERICA, | CASE NO. 12CR3429 WQH |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| TERENCE J. BONNER, | |
| Defendant. | |

15

Hayes, Judge:

16

The following motion are pending before the Court:

17

1.  Government's motion for reconsideration (ECF No. 79);

18

2.  Defendant's motion to suppress evidence for lack of authorization (ECF No. 25);

19

3.  Defendant's motion to suppress evidence from search warrants (ECF No. 30); and

20

4.  Defendant's motion for dismissal of indictment (ECF No. 31).

**BACKGROUND FACTS**

21
22
23
24

In December of 2009, Special Agent Rebecca Phenicie of United States Customs and Border Patrol Internal Affairs was assigned to the investigation of vouchers submitted by the Defendant Terence J. Bonner for reimbursement of travel expenses for the period 2004 - 2009.  Defendant was the president of the National Border Patrol Council, the union that represents all front-line Border Patrol employees from February 1989 to March 2010.

25
26
27

On March 8, 2012, United States Magistrate Judge Nita L. Stormes approved a warrant to search for documents from 2004 to the present at Defendant's residence

28

1  located at 29520 Primrose Drive, Campo, California.  The application for the warrant
2  was supported by the Affidavit of Special Agent Phenicie.

3       On March 9, 2012, Special Agent Phenicie and other law enforcement officers
4  executed the search warrant at the Bonner residence.   Agents seized 18 boxes of paper
5  documents and 35 items of electronic media.  At the conclusion of the search, Special
6  Agent Phenicie provided Defendant with a copy of the search warrant and the inventory
7  of the items seized.

8       On August 16, 2012, the federal grand jury in the Southern District of California
9  returned an Indictment charging Defendant Terence J. Bonner with one count of
10 conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, and eleven counts of
11 wire fraud in violation of 18 U.S.C. § 1343.  (ECF No. 1).  Defendant was arraigned on
12 the Indictment and entered pleas of not guilty.  (ECF No. 4).

13      On November 21, 2012, the Government sought and received a second search
14 warrant for documents and digital images seized during the March 9, 2012 search of
15 Primrose Drive which were in the possession of the Government for the period January
16 1, 1993 to the present.  (ECF No. 33-2).  Defendant subsequently moved to suppress
17 evidence seized pursuant to the search warrants.

18      On July 23, 2013, this Court entered an order concluding that the forensic
19 analysis of the electronic media seized during the March 9, 2012 search violated the
20 Defendant's rights under the Fourth Amendment.   The Court entered an order
21 suppressing "any evidence extracted from all items of electronic media" seized and
22 searched pursuant to the March 8, 2012 warrant and "all evidence searched pursuant to
23 the November 21, 2012 warrant."  (ECF No. 77 at 29).

24      On September 25, 2013, the grand jury returned a Superseding Indictment
25 charging Defendant with one count of conspiracy to commit wire fraud in violation of
26 18 U.S.C. § 1349, four counts of mail fraud in violation of 18 U.S.C. § 1341, and four
27 counts of wire fraud in violation of 18 U.S.C. § 1343.  (ECF No. 96).

28                                    **RULINGS OF THE COURT**

1   1.  <u>Government's Motion for Reconsideration</u> (ECF No. 79);

2       Plaintiff United States of America moves the Court to reconsider the "portion of

3   the July 23, 2013 Order finding that the forensic analysis of electronic evidence violated

4   the Fourth Amendment, suppressing all electronic evidence seized pursuant to the

5   March 8, 2012 Warrant, and suppressing all evidence seized pursuant to the November

6   21, 2012 Warrant."  (ECF No. 79-1).  The Government asserts that the Defendant's

7   Fourth Amendment rights were not violated for the following "four reasons, taken

8   singularly and in combination" as follows: 1) the electronic data seized and searched

9   falls within the following language of the warrant "all records or data relating to

10  [Defendant's] day to day activities"; 2) the theory of relevance was explained with

11  specificity in the affidavit in support of the search warrant; 3) the volume [four million

12  images of pornography] of the files at issue underscored their responsiveness; and 4)

13  the seizure of the electronic files from the March 2012 warrant was disclosed to a

14  second United States Magistrate Judge in the subsequent November 2012 warrant.

15  (ECF No. 79-1).

16      Defendant contends that the Government has not presented any newly discovered

17  evidence showing that Court committed clear error, or pointed to an intervening change

18  in the controlling law.   Defendant asserts that the search of the electronic data for

19  "every single item" that contained a date and time information provided no limitation

20  on the search amounting to a general warrant.  (ECF No. 82 at 4).  Defendant contends

21  that there are no grounds to reconsider the conclusion of the Court that a fair reading

22  of the March 2012 warrant does not reasonably identify adult pornography as an item

23  to be seized or searched pursuant to the warrant.  Defendant further asserts that the

24  November 2012 warrant cannot retroactively validate the violations related to the March

25  2012 warrant.

26      Absent a jurisdictional issue, the district court has the authority to decide a

27  motion to reconsider. *See, e.g. United States v. Aguirre*, 214 F.3d 1122, 1124 (9th Cir.

28  2000) ("[D]istrict courts generally have 'inherent authority' to decide motions for

reconsideration and rehearings of orders in criminal proceedings...").  Prior to the filing of the July 23, 2013 order, the parties submitted extensive briefing, and the Court heard evidence and argument from both parties.  The Government does not rely upon any additional evidence in support of the motion to reconsider.  The Government states in support of the motion to reconsider: "The United States acknowledges the Court's interpretation of the language of the March 2012 Warrant as not including authorization to search data relating to pornographic images.  Out of deference to that interpretation, the United States would refrain from seeking to use such images at trial in any way." (ECF No. 79-1 at 8).

After review of the arguments on reconsideration, the Court will not reconsider the conclusion that:

> ... employing a protocol to search items with a date and time stamp in order to examine and extract pornographic images expanded the search to data which the Government had no probable cause to collect.  A fair reading of the warrant did not include authorization to seize any item in Defendant's residence with a date and time stamp or authorization to seize photographic images marked with a date and time stamp.  The Court concludes that the forensic analysis employed search protocol not directed to identify data within the scope of the warrant and violated the Defendant's rights under the Fourth Amendment.

(ECF No. 77 at 28).  This Court has reviewed and considered the supplemental authority provided by the Government in *United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. August 23, 2013).  Consistent with this Court's prior ruling, the Court of Appeals in *Sedaghaty* states:  "Relevance, of course, is not the standard; the language of the warrant controls."  *Id*. at 913.  This Court will not reconsider the conclusion that "it was not reasonable for agents conducting the forensic examination of the imaged computer data to believe that the warrant authorized the examination, and extraction of thousands of images of adult pornography in the guise of looking for records of Defendant's 'whereabouts.'"  (ECF No. 77 at 29).   In this case, this Court made the initial determination of good faith and found that suppression of the evidence was the "proper remedy in this case."  *Id.*  The Court concludes that there are no grounds to

reconsider on this record.

In a Supplemental Memorandum the Government asks the Court to address whether "the United States complied with the Warrant's requirement of confirming, within 45 days of seizure, the status of computers as instrumentalities of crime." (ECF No.81 at 1-2). The Government asserts that the Court incorrectly stated in the July 23, 2013 order that Defendant had moved to suppress based upon the argument that the Government failed to conduct the preliminary analysis within 45 days of seizure. "Although the United States does not interpret this issue as being dispositive of the Order's conclusions - that the Fourth Amendment was violated and that suppression was warranted - the United States nonetheless seeks to clarify and address this issue herein." (ECF No. 81 at 2).

On January 8, 2013, Defendant moved for suppression of evidence seized from his home "based on five arguments ... Fourth, the government violated the explicit provisions of the warrant which required that the seizure and search was to be conducted in accordance with the 'Procedures for Electronically Stored Information' set out in the affidavit in support of the warrant. Specifically, the government was required to image and conduct a preliminary analysis of the computer and other electronic storage devices and media within 45 days of seizure." (ECF No. 34-1 at 1-2). The Government correctly states, however, that this issue was not dispositive of any conclusion in the July 23, 2013 order.

The Government's motion to reconsider is denied. (ECF No. 79).

2. Defendant's motion to suppress evidence for lack of authorization (ECF No. 25);

Defendant moves the Court "to suppress all evidence seized as a result of all search warrants in this case because of lack of authorization of Rebecca Phenicie to apply for and execute the warrants." (ECF No. 25 at 1). Defendant "concedes that ... the issuance of the [March 8, 2012] warrant was not invalid because it ... was requested by an attorney for the government in accordance with Rule 41(b) of the Federal Rules of Criminal Procedure." (ECF No. 50 at 20). As a result, the Court finds that the

motion to suppress evidence because Agent Phenicie lacked authority to apply for the March 8, 2012 warrant is denied as moot.[1]

Defendant further asserts that Agent Phenicie lacked the authority to conduct the execution of the March 8, 2012 search warrant.  Defendant asserts that Agent Phenicie, a Customs and Border Patrol Internal Affairs agent, was not a law enforcement officer authorized to execute a search warrant under Rule 41 of the Federal Rules of Criminal Procedure.  Defendant asserts that the record in this case lacks a valid exercise of the delegated authority to designate customs officers by the Assistant Commissioner for Internal Affairs. Defendant further contends that the law enforcement credentials issued to Customs and Border Patrol Internal Affairs agents are the result of an administrative error.

The Government asserts that all agents within the Customs and Border Protection have been designated as customs agents as set forth in 19 U.S.C. § 1589a, including special agents of the Customs and Border Protection, Internal Affairs pursuant to valid delegation orders.  The Government further asserts that the credentials issued to Special Agent Phenicie which bear the signature of the Commissioner of Customs and Border Protection establish the intent of the Commissioner to confer on special agents of the Customs and Border Protection Internal Affairs the authority to take steps to investigate suspected violations of the criminal law.  In the alternative, the Government asserts that Defendant would not be entitled to suppression of evidence, even if the Court were to conclude that the delegation orders in this record were not effective.

Rule 41(b)(1) of the Federal Rules of Criminal Procedure provides: "At the request of a federal law enforcement officer or an attorney for the government ... a magistrate judge with authority in the district ... has authority to issue a warrant to search for and seize a person or property located within the district."  Fed. R. Crim. P.

---

[1]  The Court suppressed the evidence obtained from the November 21, 2012 warrant in the order filed on July 23, 2013. (ECF No. 77 at 29).

1   41(a)(2)(C) states: "The following definitions apply under this rule: 'Federal law

2   enforcement officer' means a government agent (other than an attorney for the

3   government) who is engaged in enforcing the criminal laws and is within any category

4   of officers authorized by the Attorney General to request a search warrant."  Fed. R.

5   Crim. P. 41(a)(2)(C).

6          The Homeland Security Act of 2002, Pub L. No. 107-296, § 403, 116 Stat. 2135,

7   transferred the United States Customs Service from the Treasury Department to the

8   Department of Homeland Security.  On May 11, 2006, the Secretary of Homeland

9   Security delegated to the Commissioner of United States Customs and Border

10  Protection "all rights, privileges, powers, and duties enforced or administered by the

11  U.S. Custom's Service prior to its transfer to the Department of Homeland Security."

12  (ECF No. 37-1 at 1).[2]  This "DELEGATION OF AUTHORITY TO THE

13  COMMISSIONER OF THE U.S. CUSTOMS AND BORDER PROTECTION" states:

14  "Unless otherwise proscribed by statute, Executive Order, or terms of this delegation,

15  the authority conferred on the Commissioner by this delegation may be re-delegated in

16  writing by the Commissioner to an appropriate subordinate official of the CBP."  *Id*. at

17  13.

18         On December 26, 2007, Assistant Commissioner of Internal Affairs presented a

19  delegation order to the Commissioner of United States Customs and Border Protection

20  that would "grant legal authority to the Assistant Commissioner, Officer of Internal

21  Affairs to designate Internal Affairs personnel to execute functions of a 'Customs

22  officer' as that term is used in statute, regulation, and policy."  (ECF No. 37-2 at 1).

23  The Commissioner of United States Customs and Border Protection signed his

24  agreement with the proposed attached delegation order.  (ECF No. 37-1 at 13).

25         A formal order was issued on March 14, 2008, delegating the authority,

26

27  ─────────────────

28         [2]Defendant does not dispute the validity of this delegation authority.  (ECF No. 39 at 2).

specifically including 19 U.S.C.  § 1589a, of a "Customs Officer" to "all Internal Affairs special agents and Internal Affairs law enforcement officers." (ECF No. 37-3).[3]

On August 20, 2008, U.S. Department of Homeland Security Commissioner W. Ralph Basham issued to Rebecca L. Phenicie credentials stating that Special Agent Phenicie is "an employee of the U.S. Customs and Border Protection who is empowered to exercise the authority and perform the duties provided by law and Department of Homeland Security regulations including making arrests, conducting investigations, conducting searches, making seizures, bearing firearms, or serving any order, warrant, or other process." (ECF No. 56-1).

On December 21, 2009, the Acting Commissioner of the Department of Homeland Security U.S. Customs and Border Protection delegated to the Assistant Commissioner of Internal Affairs "comprehensive delegation ... to ensure that all operational officers, agents, and components within CBP... are vested, to the that any such authority has not been previously vested, with authority to enforce and administer the customs and immigration laws." (ECF No. 49-1 at 2).

The Commissioner of United States Customs and Border Protections has the authority to appoint Agent Phenicie as a Special Agent of the U.S. Customs and Border Protections empowered to exercise the enforcement authority of a customs agent under 19 U.S.C. § 1589a.  The issuance of these credentials to Agent Phenicie from the Commissioner was a valid exercise of his authority to designate Rebecca Phenicie as a Special Agent of the U.S. Customs and Border Protection.  Even if the Court were to conclude that the delegation orders in this record were not effective, which the Court does not conclude, the record in this case establishes that Agent Phenicie was authorized by the Commissioner of the U.S. Department of Homeland Security as a

---

[3] 19 U.S.C. § 1589a provides in part: "Enforcement authority of customs officers ... Subject to the direction of the Secretary of the Treasury, an officer of the customs may– ... (2) execute and serve any order, warrant, subpoena, summons, or other process issued under the authority of the United States."

Special Agent of the U.S. Department of Homeland Security to conduct searches. (ECF No. 56-1 at 2). Throughout the investigation of this case, Agent Phenicie possessed valid credentials issued to her by the Commissioner of the U.S. Customs and Border Protections authorizing her to conduct an investigation into suspected violations of the criminal law, including the execution of a valid search warrant issued by a magistrate judge.

The Court concludes that no violation of Rule 41 occurred in this case and that no violation of Defendant's rights under traditional standards occurred which could support suppression of evidence. *See United States v. Luk*, 859 F.2d 667, 671 (9th Cir. 1988). ("Only a 'fundamental' violation of Rule 41 requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards.").

Defendant's motion to suppress evidence for lack of authorization (ECF No. 25) is denied.

3. Defendant's motion to suppress evidence from search warrants (ECF No. 30);

The Government states that "Defendant's motion is moot as the United States does not intend to use any information gained from these two search warrants." (ECF No. 37 at 8). The Court finds that there is no derivative evidence obtained as a result of the information from these warrants in light of the order of July 23, 2013.

Defendant's motion to suppress evidence from search warrants (ECF No. 30) is denied as moot.

4. Defendant's motion for dismissal of indictment (ECF No. 31);

Defendant moves to dismiss the indictment on the grounds that the agents of Internal Affairs of the U.S. Customs and Border Patrol Protection had no authority to conduct a criminal investigation in this case absent the supervision of either the Department of Homeland Security Office of Inspector General or Immigration and Customs Enforcement Office of Professional Responsibility. The Government asserts that the case was declined by the Office of Inspector General, and that Internal Affairs

1   of the U.S. Customs and Border Patrol Protection is authorized to investigate criminal

2   cases as well as non-criminal misconduct.

3        On June 10, 2004, the Department of Homeland Security issued  management

4   directive 0810.1 intended to establish the Department of Homeland Security policy

5   regarding the Office of Inspector General.  (ECF No. 31-3).  Appendix A of the

6   directive stated in part: "The categories of misconduct identified below shall be referred

7   to the OIG... - All allegations of criminal misconduct against a DHS employee." *Id*. at

8   6.

9        On December 11, 2009, the Joint Intake Center, Washington, D.C., received an

10  email from Customs and Border Protection (CBP), Assistance Chief Patrol Agent

11  Egerton reporting that Border Patrol Agent Bonner, Campo, CA, "failed to submit travel

12  vouchers as per regulations." (ECF No. 71-1 at 2).[4]  The Joint Intake Center is a

13  clearinghouse at headquarters that is comprised of personnel from CBP Internal Affairs,

14  ICE, OPR, and DHS Office of Inspector General.  When information is received, the

15  Joint Intake Center enters the information into a database known as the Joint Integrity

16  Case management system, referred to as the JIC database.  All of the agencies noted

17  above have access to the information in the JIC database.  Joint Intake Center initially

18  refers cases to the DHS Office of Inspector General.  The DHS Office of Inspector

19  General decides whether to accept the case or to refer it back to the Joint Intake Center.

20  Once the Office of Inspector General declines a case, the Joint Intake Center refers the

21  case to another agency.

22       In this case, the records of the Joint Intake Center show that this case began with

23  a referral from Border Patrol to the Joint Intake Center; that the Joint Intake Center

24

25      [4]This Court held an evidentiary hearing on September 4, 2013 receiving evidence

26  and taking testimony from Special Agent Kathryn Butterfield, the Special Agent in
    charge of Customs and Border Protection, Office of Internal Affairs, San Diego and

27  Special Agent Phenicie.  (ECF No. 86).

28

referred the case to DHS Office of Inspector General which declined the case; that the DHS Office of Inspector General referred the case back to the Joint Intake Center; and that the Joint Intake Center referred the case to CBP Internal Affairs.  The matter was titled in the JIC database: "BONNER, TERENCE/BORDER PATROL AGENT/1610 General Misconduct-Other Non-criminal/CAMPO, SAN DIEGO, CA."  The case notes in the JIC database state in part:

> 12-15-09: Reviewed by JIC, Class 2. Transmitted to DHS/OIG for immediate notification.
> 12-16-09: Declination by DHS/OIG.  Referred to JIC Pending for IOD review.
> 12-16-09: Declination by DHS/O
> File forwarded to IA SAIC/San Diego for investigation
> 12/21/2009 SA Phenicie assigned the case.

(Government's Exhibit 1).   The record shows that Agent Phenicie began an administrative investigation upon referral of the case for investigation by the Joint Intake Center.   Agent Phenicie received copies of government credit card statements and additional vouchers filed by Defendant.  Agent Phenicie began working with the United States Attorney's Office on the investigation and subsequently with the grand jury.  The JIC database case notes state:  "March 22, 2010 JIC database  Case Notes: Returned 6e letter to US Attorney's Office"; and "December 10, 2010 JIC database Case Notes: New Grand Jury Subpoena requested for NBPC".   *Id*.  Special Agent Phenicie continued to investigate the case and to enter case notes into the Joint Intake Center database detailing the progress of the investigation.   The United States Attorney's Office presented the case to the grand jury and the grand jury returned a criminal indictment.   Prior to the date of the indictment, Agent Phenicie wrote approximately 17 reports which were entered into the JIC database detailing the investigation.

Defendant asserts that the Internal Affairs Special Agents deliberately evaded and manipulated the JIC database in order to do a criminal investigation without the

appropriate approval of the Office of the Inspector General.  Defendant asserts that the JIC database notes only a non-criminal investigation into failing to submit travel vouchers per regulations and mischaracterized the intentions of Internal Affairs to conduct a criminal investigation.  Defendant contends that dismissal of the indictment is appropriate on the grounds that Internal Affairs Special Agents manipulated the process in bad faith.

The Government asserts that the Internal Affairs Special Agent pursued her suspicions of criminal allegations; that the United States Attorney initiated the prosecution and that the grand jury investigated and returned an indictment.  The Government contends that dismissal of the indictment is not supported by any facts or law in this case.  The Government contends that "Defendant has not cited a single authority from any jurisdiction that so much as suggests that dismissal of the indictment would be an appropriate remedy."  (ECF No. 70 at 11).

Section 8I(e) of the Inspector General Act of 1978 as amended states in part:

> Notwithstanding any other provision of law, in carrying out the duties and responsibilities specified in this Act, the Inspector General of the Department of Homeland Security shall have oversight responsibility for the internal investigations performed by the Office of Internal Affairs of the United States Customs Service, the Office of Inspections of the United States Secret Service, the Bureau of Border Security, and the Bureau of Citizenship and Immigration Services. The head of each such office or bureau shall promptly report to the Inspector General the significant activities being carried out by such office or bureau.

Inspector General Act of 1978, § 8I, 5 U.S.C.A. App. 3.  In this case, the record in the JIC database stated: "Declination by DHS/OIG" and "File forwarded to IA SAIC/San Diego for investigation."  (Government Exhibit 1).  At the time that Special Agent Phenicie was forwarded the case for investigation, she was authorized to exercise the authority and perform the duties provided by law as a Special Agent of the U.S. Customs and Border Protection.  Special Agent Phenicie conducted interviews and collected documents.  Within a few months of initiation of the investigation, Special

1    Agent Phenicie began working with the United States Attorney.  Case Notes were
2    entered into the JIC database throughout the investigation referencing the work with the
3    United States Attorney and the grand jury.  The records in this case establish that the
4    initial investigation was an administrative investigation into travel vouchers and that
5    Agent Phenicie investigated suspicions that the criminal law had been violated.  No
6    regulation required Internal Affairs to cease all investigation at the moment that
7    criminal suspicions entered into the investigation.  Nothing in Appendix A required
8    Special Agent Phenicie to halt her investigation.  Special Agent Phenicie continued
9    throughout the investigation to enter case notes into the JIC database disclosing the
10   participation of the United States Attorney and the grand jury to the Office of Inspector
11   General and the other agencies who had full access to the JIC database.

12          The Court concludes that no facts in this record to support allegations of bad faith
13   or misuse of the grand jury by any agent of CBP Internal Affairs.  *See United States v.*
14   *R. Enterprises*, 498 U.S. 292, 297 (1991)("Unlike this [federal courts], whose
15   jurisdiction is predicated on a specific case or controversy, the grand jury can
16   investigate merely on suspicion that the law is being violated, or even just because it
17   wants assurance that it is not. The function of the grand jury is to inquire into all
18   information that might possible bear on its investigation until it has identified an offense
19   or has satisfied itself that none occurred." (internal quotation omitted)).   The Court
20   further concludes that no law entitles the Defendant to dismissal of the indictment on
21   the grounds that this investigation was conducted by Special Agents of CBP Internal
22   Affairs.   Defendant's motion for dismissal of indictment (ECF No. 31) is denied

23

24

25

26

27

28

**CONCLUSION**

IT IS HEREBY ORDERED that:

1. Government's motion for reconsideration  (ECF No. 79) is denied;

2. Defendant's motion to suppress evidence for lack of authorization (ECF No. 25) is denied;

3.  Defendant's motion to suppress evidence from search warrants (ECF No. 30) is denied as moot; and

4. Defendant's motion for dismissal of indictment (ECF No. 31) is denied.

DATED:  November 13, 2013

**WILLIAM Q. HAYES**
United States District Judge